E-FILED
Friday, 08 December, 2017 08:59:02 AM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| SHAUN KOSTKA,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:17-cv-04032-JEH |

**Order and Opinion**

Now before the Court is the Plaintiff Shaun Kostka's Motion for Summary Judgment (Doc. 11) and the Commissioner's Motion for Summary Affirmance (Doc. 15).[1] For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Commissioner's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[2]

**I**

Kostka previously filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on December 21, 2009 alleging disability beginning on March 15, 2009. His claims were denied on May 17, 2010 and he did not appeal that denial.

Then, on April 15, 2013, Kostka filed an application for SSI and one for DIB on April 22, 2013 again alleging disability beginning on March 15, 2009. His claims were denied initially on July 24, 2013 and were denied upon reconsideration on March 27, 2014. On April 22, 2014, Kostka filed a request for hearing concerning his applications for DIB and SSI. A hearing was held before the Honorable Susan F. Zapf (ALJ) on June 1, 2015. At the hearing, Kostka was represented by counsel and a Vocational Expert (VE) testified. Following the hearing, Kostka's claim was denied on July 30, 2015. His request for review by the Appeals Council was denied on December 16, 2016, making the ALJ's Decision the final decision of

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 9, 10).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 6) on the docket.

the Commissioner. Kostka filed the instant civil action seeking review of the ALJ's Decision on January 31, 2017.

II

At the time he again applied for benefits on April 15, 2013, Kostka was 39 years old living in Moline, Illinois. On his Form SSA-3368, Kostka listed all the physical or mental conditions that limited his ability to work as follows: back injury; bipolar disorder; PTSD; depression; and anxiety. AR 314.

At the hearing, Kostka testified that he lived in a mobile home with his minor daughter. He drove six to seven miles on average during the week. He obtained his GED and last worked in March 2009. In the past, he worked as a cashier, industrial maintenance electrician, and a maintenance sanitation foreman. Kostka testified that he believed he could not work at present because he was in pain and was paranoid which felt like claustrophobia and like a panic attack. He also testified that he was seeing a psychiatrist at the Robert Young Center for years. He testified that he took his medications as prescribed, including some for pain. He experienced dizziness, shaky hands, sleepiness, and "lots of other things" as side effects from his medications. AR 66. His doctor changed his medications in an effort to reduce Kostka's side effects. He was taken off Ativan because he drank alcohol while on it. He drank alcohol and had five beers the night before the hearing. He said he drank alcohol for pain relief but did not have issues when attempting to stop drinking. He described where his back pain occurred and what he did to attempt to make it better and what he did that made it worse.

Kostka also testified that his anxiety interfered with his ability "to do lots of stuff." AR 70. He stated that he could walk with a basket at the grocery store until he had a panic/anxiety attack. He spent approximately one hour when he did go to the grocery store. He previously went to rehab years before when he started seeing a psychiatrist. He did not believe his drinking interfered with his social ability. He socialized with a neighbor and never socialized with more than two people at a time. His girlfriend came over to his house a couple of times a week. He otherwise had no social activities. He explained that with so many people around him, he could not handle it; he felt "boxed in." AR 75. It did not matter whether he knew those around him or not. Kostka further testified that he could not really

leave his house when he wanted as he had anxiety attacks. He missed his daughter's doctor appointments because of the anxiety he experienced when he left his house. As of the hearing date, Kostka had been hospitalized because of his anxiety or depression just once before.

Upon questioning by his attorney, Kostka described sensations in his chest as tightness and feeling like he was claustrophobic as well as a racing heart and a manic feeling. Kostka explained that agoraphobia affected him so that he could not leave his house. He felt like he was stuck in a box. He felt fearful that something might happen and he also had a physical reaction to leaving his home. Kostka testified that he believed structuring his life so that he did not have to go out much helped him control his symptoms. He spoke with his doctors about those feelings and their feedback was to change medications and recommend he go see a counselor. When he went to the grocery store, he would stay in an empty aisle and when he went to the doctor's, office he would sit as far away from others as he could. He had problems getting along with other people in his life.

Kostka also testified regarding his memory. He stated that because of his memory problems, he was really disorganized. He would not remember where he set things down around his house such as glasses, papers, and small things. He had trouble completing tasks. He said he tried "lots of things" to help him complete the things he started but so far there was nothing he could do to control or lessen his issues with completing things. As for his sleep, Kostka testified that he slept no more than two and a half hours straight during the night and otherwise was up and down all night long for pain, to go to the bathroom, or because he just could not sleep. He testified about the limited amount of chores he did around his house.

Kostka next testified further about his physical ailments. His attorney then returned to Kostka's work history and asked him what kept him from working like he used to work. Kostka explained that it was because of his anxiety, lack of control, lack of not wanting to go out of the house, and "just the stuff that is in my head, I guess." AR 84. He said he tried not drinking on his prescribed medications and that it did not make any difference. When asked what would have to change for him so that he could work like he once did, Kostka answered that the pain in his back, anxiety issues, and getting along with people were things that would have to improve.

3

The ALJ proceeded to question the VE, Alfred Walker. The VE testified that he did not discuss his own testimony with the ALJ or Kostka prior to the hearing. He testified that he read the file regarding Kostka's work history and listened to Kostka's testimony. The VE did have questions regarding Kostka's past work history which were addressed and resulted in the VE amending the past work summary to replace building maintenance worker with maintenance electrician. The ALJ then asked the VE:

> Q. Okay, okay. I would like you to consider a hypothetical individual with the same age, education, and having the same past work as this claimant, limited to a range of medium work, with occasional stooping, crouching, crawling, and kneeling. Occasional ladders, ropes, and scaffolds, occasional interaction with coworkers and supervisors, no interaction with the public. Is there any past work he could perform?
> A. I would say no. There is no past work.

AR 88-89. The VE testified that there was other work Kostka could perform including medium strength work of counter supply worker and industrial cleaner and light strength work of laundry worker and housekeeper. At the sedentary level, the VE identified the jobs of ticket checker and document preparer. The VE also provided the number of jobs for each of those positions both regionally and nationally. The ALJ then asked the VE:

> Q. With these sedentary jobs, if he had to stand at his workplace for up to two minutes after sitting 45 minutes, could he do those jobs?
> A. Yes, your honor.
> Q. And are your results consisting [sic] with the Dictionary of Occupational Titles?
> A. Yes, your honor.

AR 89-90. The VE proceeded to testify regarding the specific source for his job numbers (the Occupational Employment Survey).

Next, Kostka's attorney questioned the VE:

> Q. All right. So, we have got one hypothetical that has been asked, and you, Mr. Walker, came up with a number of medium, light, and sedentary jobs that could be done, even though past work would be eliminated.
> A. That's -- yes, sir.
> Q. Okay. Would it make a difference in your response in that one hypothetical that you were asked if there had been included

4

> problems with either concentration or persistence or pace in the work setting?
> 
> A. There could be problems, yes, sir.
> 
> Q. Okay. What sort of problems would give rise to a change in answer? What level of problems with concentration or persistence or pace, however you would express it?
> 
> A. Anything that results in off task behavior or reduced productivity.
> 
> Q. Okay.
> 
> A. Absenteeism.
> 
> Q. All right. That was my next question here. If we had a person with moderate problems – not mild, not marked – in limitations, in the ability to complete a normal work day and work week without interruptions, is that where you are coming from with the absenteeism?
> 
> A. Yes, sir.

AR 90-91. The ALJ then interjected and explained to Kostka's attorney that he would have to be more specific in defining moderate. The attorney stated:

> Atty: And I am asking Mr. Walker what level of limitations in terms of interruptions of the work day or work week would give rise to change in response or answer?
> 
> ALJ: Okay.
> 
> Atty: Rather than trying to define it myself and it is not defined here. I am asking what would be a problem.
> 
> ALJ: Okay.
> 
> VE: Absenteeism would be anything more than eight to 10 days per year.
> 
> Atty: Per year. Okay.
> 
> VE: Yes. Off task behavior, anything greater than 10 percent.
> 
> Atty: Okay.
> 
> VE: They are expected to work 90 percent or higher.
> 
> Atty: Okay.
> 
> Q. Do any of these jobs involve – we'll call it changes in the work setting?
> 
> A. No. They are pretty much routine jobs that do the same tasks day after day.
> 
> Q. Okay. So, pretty unvarying tasks, work requirements.
> 
> A. Yes, sir.

AR 92-93.

### III

In her Decision, the ALJ determined that Kostka had the following severe impairments: disorder of the back; bipolar disorder; generalized anxiety disorder, personality disorder, and substance abuse. AR 20. Early in her Decision, the ALJ explained that Kostka established a moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. The ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c) except no more than occasional stooping, crouching, crawling, kneeling, and climbing of ladders, ropes, or scaffolds, limited to simple, routine, repetitive tasks, and no more than occasional interactions with coworkers and supervisors, and no interaction with the public.

AR 25.

In support of that RFC finding, the ALJ set forth a detailed summary of Kostka's testimony and his medical records. The ALJ also discussed Kostka's statements on his disability report from his prior application as well as his current application, his physical impairments questionnaire, and his ADL questionnaire. The ALJ also detailed Kostka's girlfriend's third party questionnaire. The ALJ considered medical and psychiatric records which dated back to 2009, including annual mental health reassessments. The ALJ discussed Kostka's consultative psychological and physical evaluations (both those evaluations that were part of his prior application and those part of his current application) and he extensively discussed Kostka's treating mental health provider, Dr. John Ciaccio, M.D.'s, notes. The ALJ also detailed Dr. Ciaccio's Medical Opinion re: Ability to do Work-Related Activities (Mental) and The ALJ discussed Kostka's psychiatric hospitalization in December 2009 and a November 2010 ER visit prompted by Kostka's girlfriend's belief that Kostka was suicidal. The ALJ also detailed Kostka's medications, their side effects, their efficacy, and the changes made between medications. The ALJ also discussed state agency medical and psychological consultants' opinions.

Toward the end of her Decision, the ALJ recited the jobs and numbers of those jobs available to which the VE testified a hypothetical individual with Kostka's age, education, and past work could perform. The ALJ concluded:

> The cited jobs are classified as unskilled and the vocational expert stated the jobs were routine in nature. Therefore, including a limitation to the simple, routine, repetitive tasks of unskilled work would not change the outcome.

AR 47.

## IV

Kostka argues: 1) remand is required to apply the Commissioner's clarified policy on assessing a claimant's symptoms; 2) the ALJ's finding of mental residual functional capacity and questions to the VE do not convey any limitations in concentration, persistence, or pace; 3) because the ALJ erroneously discounted the opinions of a long-term treating doctor, her finding of mental residual functional capacity is not supported by substantial evidence; and 4) the ALJ reopened an adverse decision from 2010.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in

determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566; 20 C.F.R. § 416.966 (1986).[3] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Kostka claims error on the ALJ's part at Steps Four and Five.

**A**

---

[3] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

Though Kostka raises several arguments in his Motion for Summary Judgment, the Court begins and ends with Kostka's argument that the ALJ committed error warranting remand where her question to the VE contained no limits in concentration, persistence, or pace.

"Ordinarily, an ALJ's hypothetical questions to a VE must include all limitations supported by medical evidence in the record." *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (internal citation omitted). In other words, an ALJ must orient the VE to the totality of the claimant's limitations, including those pertaining to deficiencies in concentration, persistence, or pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Here, the ALJ included in her RFC that Kostka was limited to "simple, routine, repetitive tasks" and she explicitly acknowledged in her Decision that Kostka experienced moderate difficulties in concentration, persistence, and pace. In support of her RFC finding that recognized such limitations, the ALJ identified a state agency psychological consultant's May 2010 psychiatric review technique form in which the consultant opined that Kostka "retained the mental and behavioral capacity to do simple tasks within the noted limitations." The ALJ also recited a different state agency psychological consultant's July 2013 opinion which was that Kostka retained the mental capacity to understand, remember, and concentrate sufficiently to carry out simple instructions for a normal work period, that he could make simple work-related decisions, and that he could adapt to simple, routine changes and pressures in a work environment. Toward the end of her Decision, the ALJ stated, "Although the claimant may not be able to sustain the concentration and attention required of detailed or complex tasks, he could perform the concentration and persistence needed to perform simple, routine, repetitive tasks." AR 45.

However, in her question to the VE during the hearing, the ALJ entirely omitted any reference to Kostka's limitations in concentration, persistence, and pace. The ALJ asked the VE:

> I would like you to consider a hypothetical individual with the same age, education, and having the same past work as this claimant, limited to a range of medium work, with occasional stooping, crouching, crawling, and kneeling. Occasional ladders, ropes, and scaffold, occasional interaction with coworkers and supervisors, no interaction with the public. Is there any past work he could perform?

AR 88. The VE answered in the negative. Interestingly, this is not a case in which the claimant is arguing that the ALJ somehow insufficiently translated the claimant's limitations in concentration, persistence, and pace when posing hypothetical questions to the VE. The ALJ here simply did not explicitly or even implicitly attempt to alert the VE to Kostka's additional limitations (which the ALJ herself found supported in the record as set forth in her RFC) beyond those regarding social interaction. That omission is significant as the reason for the rule that hypothetical questions posed to VEs must ordinarily include all limitations supported by the medical evidence of record is to "ensure that the [VE] does not refer to jobs that the applicant cannot work because the expert did not know the full range of the applicant's limitations." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

The Seventh Circuit has explained that an exception to that rule "comes into play when the record indicates that the VE independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) and presumably accounted for them." *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). "The exception does not apply if the record indicates that the VE's testimony was confined to the limitations set forth in the ALJ's hypothetical question." *Id*. Here, the Commissioner does not argue and the record does not indicate that the VE independently knew of Kostka's inability to sustain the concentration and attention required of detailed or complex tasks. The ALJ explicitly represented only that he had read Kostka's *work history* and listened to his testimony. AR 87. The ALJ proceeded to ask the VE the hypothetical question recited above. Kostka's attorney's follow up questions to the VE reveal that the VE did, in fact, confine his testimony to the hypothetical question as presented:

> Q.   All right. So, we have got one hypothetical that has been asked, and you, Mr. Walker, came up with a number of medium, light, and sedentary jobs that could be done, even though past work would be eliminated.
> A.   That's -- yes, sir.
> Q.   Okay. Would it make a difference in your response in that one hypothetical that you were asked if there had been included problems with either concentration or persistence or pace in the work setting?
> A.   There could be problems, yes, sir.
> Q.   Okay. What sort of problems would give rise to a change in answer? What level of problems with concentration or persistence or pace, however you would express it?

|   |   |   |
|---|---|---|
| A. | | Anything that results in off task behavior or reduced productivity. |
| Q. | | Okay. |
| A. | | Absenteeism. |

AR 90-91.

Finally, the Commissioner argues that the ALJ's error in this regard was harmless because the VE identified simple, unskilled jobs in sufficient numbers to sustain the ALJ's finding. This argument is not entirely unsupportable. *See Steele*, 290 F.3d at 942 (explaining that the court's misgivings about the VE's incomplete testimony were not acute where the VE testified at length about how bouts of hostility brought on by the claimant's depression might affect his vocational profile and the jobs identified might not demand levels of sociability or concentration beyond his capabilities). Nevertheless, the Court cannot say that the ALJ's omission here was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). The ALJ's hypothetical to the VE was incomplete, there is no clear evidence of record that the VE was otherwise sufficiently informed of or aware of Kostka's limitation to simple, routine, repetitive tasks, and the VE's answers to Kostka's attorney's follow up questions at the very least suggest that the VE should have been presented with a hypothetical that echoed the ALJ's RFC finding. *See Patty v. Barnhart*, 189 F. App'x 517, 522 (7th Cir. 2006) (concluding the ALJ's omission from the hypothetical to the VE could not be found harmless where the VE was present for the testimony regarding the claimant's mental health and reviewed the record and where the VE responded to a hypothetical that did not include all of the limitations that even the ALJ's written RFC included).

As for the Commissioner's argument that the VE identified simple, unskilled jobs in sufficient numbers to sustain the ALJ's finding, unlike in *Steele*, the VE here did not elaborate in any way upon the ways in which Kostka's particular issues might affect his vocational profile. The Court in this case is in no position to make a judgment that rests within the VE's purview. This is particularly so where:

> [F]or most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes *substantial evidence* of the jobs a claimant can do.

*O'Connor-Spinner*, 627 F.3d at 620-21 (emphasis added). Toward the end of her Decision, the ALJ stated:

> The cited jobs are classified as unskilled and the vocational expert stated the jobs were routine in nature. Therefore, including a limitation to the simple, routine, repetitive tasks of unskilled work would not change the outcome.

AR 47. Just as the Court is not in a position to do so, the ALJ also was not in a position to make this post hoc determination where those jobs cited were not in response to a hypothetical that oriented the VE to the totality of Kostka's limitations. The ALJ expressly stated that she concluded Kostka was capable of making a successful adjustment to other work that existed in significant numbers in the national economy "*[b]ased on the testimony of the vocational expert*." AR 47 (emphasis added). Similarly, the ALJ may have properly determined that "any problems with concentration, persistence, or pace would be primarily the result of social anxiety" such that "a socially undemanding work setting would largely alleviate [Kostka's] moderate difficulties in maintaining concentration, persistence, or pace" in her Decision. AR 46. But that conclusion did not excuse her from her obligation to alert the VE in the first place to Kostka's moderate difficulties.

For all these reasons, the ALJ's Decision at Step Five was not supported by substantial evidence.

**B**

Because the Court has determined that the ALJ's hypothetical question to the VE was flawed as to preclude finding that the ALJ's Decision was supported by substantial evidence, the Court will not address Kostka's remaining arguments. Nonetheless, in light of the fact that the Court is remanding this matter for the aforementioned reasons, the ALJ shall revisit her credibility assessment, mental residual functional capacity finding, and consideration of the opinions provided by Kostka's long-term treating doctor to ensure that the testimony she elicits from the VE is sufficient. The ALJ shall also explicitly address any constructive request for reopening.

**V**

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 11) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc. 15) is DENIED, and this

matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to properly include all limitations supported by the record within the hypothetical presented to the VE.

*It is so ordered.*

Entered on December 7, 2017.

<u>s/ Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE